**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **BRIAN ANTHONY MCKINNEY,** ) <br>    **ID # 1603588,** ) <br>        Petitioner, ) <br> vs. ) <br>  ) <br> **RICK THALER, Director,** ) <br> **Texas Department of Criminal** ) <br> **Justice, Correctional Institutions Division,** ) <br>        Respondent. ) | No. 3:12-CV-1105-L (BH) <br><br> Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I.  BACKGROUND**

Brian Anthony McKinney (Petitioner) challenges his conviction for family violence assault in cause F08-63554-Y. The respondent is Rick Thaler, Director of TDCJ-CID (Respondent).

**A. Factual and Procedural History**

On January 15, 2009, the State indicted Petitioner for family violence assault of Tiffany Moon on or about December 1, 2008. (Clerk's Record ("C.R."):2). The indictment also alleged two enhancement paragraphs. *Id*. He pleaded not guilty and was tried before a jury in Dallas County on July 14-15, 2009. The state appellate court recounted the evidence at trial as follows:

> Appellant's former live-in girlfriend, Tiffany Moon, testified that in the early hours of a December morning, appellant hallucinated that Moon was giving oral sex to someone in front of him. He also hallucinated that she and his ex-wife were plotting to kill him. He hallucinated that the ex-wife was hiding in their closet.
>
> Appellant threatened to chop Moon into small pieces and throw her into a lake so no one could identify her body. He

threatened that if she ever called the police to report his behavior, he would catch her and kill her. He made Moon believe he had a gun. He choked Moon and pushed her down so hard that she heard her neck crack in three places. Appellant gave Moon thirty seconds to call the person he believed he had seen her with or he said he would kill her. After thirty seconds passed, he gestured as though he was taking a gun from his pants, then he put his knuckle to Moon's head and made a loud noise like he was firing a gun. He took her phone from her and hid it. He told her that if she wanted to keep a roof over her and her son's head, she needed to perform oral sex on him, so she complied. Afterward, he kicked Moon and the three-year-old son out of the apartment into freezing temperatures outside. He intermittently opened the door to yell "stupid things" at Moon then closed and locked the door again.

Moon was scared. She thought appellant was going to kill her. She said that appellant's behavior that night was violent, insane, and very abnormal. She believed that if the police had not arrived approximately ten minutes after appellant forced her outside, the violence against her would have continued. When the police arrived, appellant acted as if nothing had happened. Moon recalled he was "trying to be all nice and polite" to the officers "like he had something to hide." Moon testified that she is "[v]ery much" afraid of appellant. She testified that both she and appellant have mental problems. She admitted they both had also been using crack cocaine the night of the offense.

Dallas police officer Russell Crocker testified that when he reported to the scene, he was talking to Moon when appellant approached him "in an excited state." Appellant "was acting very strange, fast speaking, sweating a lot, and just something didn't seem right." Appellant told Crocker that he caught Moon with another man "and he choked her, and put her out of the house." Crocker observed redness and swelling around Moon's neck area in addition to a couple of abrasions. Crocker did not see any injuries on appellant.

Appellant testified in his own defense. He denied choking Moon. When he asked if he caused her physical harm or injury, he replied,

> Sir, upon the evening that we had the altercation, I do recall grabbing her by the hand because she was leaving the house with the keys. And I taken [sic] the

2

> key out of her hand and said "get out of the house."
> That's what I done. All this choking and grabbing her
> by the throat and all this I did not do.
>
> He continued, "If that's what you call bodily injury to her hand or to her arm, then I did that. Other than that, I didn't do anything of the nature." Moon, however, claimed she never had her keys during the offense. According to her, appellant had used her keys earlier when he had borrowed her car and had not returned them.
>
> Appellant stated that the altercation between Moon and him was the result of his discovering that the father of Moon's child had been at his apartment. He denied coercing Moon into performing oral sex on him. He denied threatening to kill her. He also denied telling police that he had choked Moon. According to his version of events, he did not approach police when they arrived but rather was assaulted by the officers after he let them into his apartment.
>
> Appellant admitted that he has been diagnosed with bipolar paranoid schizophrenia and that he hallucinates "at times." He stated that both he and Moon stopped taking their medications when they were doing drugs together. He acknowledged that he had been using cocaine the night of the offense. When asked if he hallucinated at all that night, he replied, "I don't think it was a lot of hallucinations. Maybe a few, but that's been eight and a half months ago."

*McKinney v. State*, 2010 WL 2952083, No. 05-09-00870-CR, slip op. at *1-2 (Tex. App.–Dallas, July 29, 2010, no pet.). The jury found Petitioner guilty. He pled true to the enhancement paragraphs and, after a sentencing hearing, the jury sentenced him to twenty-nine years imprisonment. (C.R.:4; R. 3:122, 169).

On direct appeal, Petitioner alleged that the trial court erred in permitting the State to impeach him with remote convictions and that he received ineffective assistance of counsel because counsel failed to request a jury instruction on the lesser included offense of misdemeanor assault. *McKinney*, slip op. at *1, 3. Petitioner's conviction was affirmed on direct appeal. He did not file a petition for discretionary review (PDR). Petitioner filed his state habeas application on February

11, 2011. (State Habeas Transcript "S.H.Tr." at 2). He contended that (1) the trial court did not have jurisdiction to convict him of assault under the Texas Constitution (grounds one through three); and (2) his trial counsel was ineffective for failing to properly cross-examine the complaining witness and the police officer regarding the injuries to her neck. (S.H.Tr.:7-10). On January 18, 2012, the Court of Criminal Appeals denied the state writ without a written order on the findings of the trial court. *Id*. at cover.

**B.      Substantive Claims**

Petitioner's petition for federal habeas relief was received on April 10, 2012. It asserts that his trial attorney was ineffective for failing to properly cross-examine the complaining witness and the police officer, and that the trial court did not have jurisdiction because the penal code section under which Petitioner was convicted violates the Texas Constitution. (Pet. at 6). Respondent filed a response on July 17, 2012, and provided the state court records. Petitioner filed a reply brief on October 11, 2012. In his reply brief, Ietitioner asserts a new claim that his trial counsel was ineffective for failing to raise an insanity defense at trial. (Reply at 1).

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —

4

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th

Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial counsel was ineffective by failing to properly cross-examine the complaining witness and the police officer who responded to the scene and failing to raise an insanity defense. (Pet. at 6, Reply at 1).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*,

6

466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A.  **Failure to Cross-Examine**

In his first ground for relief, Petitioner asserts that his trial attorney was ineffective for failing to cross-examine the complaining witness and the police officer who responded to the crime scene. In his state habeas application, Petitioner also claimed that the cross-examination was ineffective because counsel did not question the witnesses regarding Moon's claim that she heard her neck crack in three places or about possible photographs of the injury. (S.H.Tr.:10). The state habeas court denied this claim on its merits, finding that defense counsel was not ineffective in his representation of Petitioner under *Strickland*. This decision is not an unreasonable application of federal law.

Petitioner was charged with family violence assault. The indictment alleged that he assaulted Moon by grabbing her with his hands. (C.R.:2). Under Texas law, a person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another. It is a third degree felony if it is determined to be an assault on someone he is dating. *See* TEX. PENAL CODE.

7

ANN. § 22.01(a)(1), (b)(2) (West 2007). "Bodily injury" is defined under Texas law as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (West 2003).

Moon testified that Petitioner pushed her down so hard that her neck cracked (but did not break) in three places, and that Petitioner choked her. (R. 3:36-39). Defense counsel cross-examined Moon in detail about her relationship with Petitioner, her own mental illness, and the fact that they were both using crack cocaine on the night of the incident. (R. 3:45-51). Defense counsel also cross-examined one of the police officers who responded to the scene about statements Petitioner made to the police. (R. 3:67-9). Petitioner has not shown that further questions regarding Moon's "cracked" neck would have reasonably resulted in his acquittal. He was charged with assaulting her by grabbing her with his hands, and Moon testified that he choked her and caused her pain. Whether or not there was an injury to her neck that either was or was not photographed, there was evidence of an assault that caused bodily injury. Petitioner has not shown that defense counsel was deficient in his cross-examination of either witness. This claim lacks merit and should be denied.

**B.** **Failure to Assert Insanity Defense**

Petitioner claims for the first time in his reply brief that his trial attorney was ineffective for failing to raise an insanity defense at trial. He acknowledges that he has not exhausted this issue at the state level, as required by 28 U.S.C. § 2254(b)(1), but argues that exhaustion would be futile. (Reply at 1). Because he is entitled to no habeas relief on this unexhausted claim, the Court bypasses the procedural issue and proceeds to the merits of the claim. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d

285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

Petitioner claims that his trial attorney was ineffective for failing to raise an insanity defense at trial based on evidence in the record that petitioner had been prescribed psychiatric medication to control a mental disorder but was not taking his medication at the time of the offense. Under state law, it is an affirmative defense to prosecution that at the time of the conduct charged, a defendant did not know that his conduct was wrong as a result of a severe mental disease or defect. *See* TEX. PENAL CODE ANN. § 8.01(a) (West 2003). This defense excuses a person from criminal responsibility even though the State has proven every element of the offense beyond a reasonable doubt. *Ruffin v. State*, 270 S.W.3d 586, 592 (Tex. Crim. App. 2008). However, the existence of a mental illness, alone, is not sufficient to establish legal insanity. Instead, the defendant must have been mentally ill at the time of the offense to the point that he did not know his conduct was wrong. *Nutter v. State*, 93 S.W.3d 130, 132 (Tex. App–Houston [14th Dist.] 2001, no pet.).

Prior to trial, Petitioner was examined by a psychiatrist who diagnosed him with Schizoaffective Disorder, Bipolar Type, that was in remission at the time of the evaluation because he was on psychiatric medication. She also gave her medical opinion that Petitioner was competent to stand trial and needed to stay on the medication to remain competent. She gave no opinion about

9

his mental state at the time of the assault. (C.R.:17-20). At trial, Petitioner testified on his own behalf and denied that he ever choked the victim or caused her physical harm or injury. He testified that he only grabbed the keys out of her hand and told her to get out of the house. (R. 3:81). He acknowledged that he had been diagnosed with a mental illness caused by a car hitting him, that he had hallucinations, and that he did not take his psychiatric medications at the time of the offense because he was doing drugs. He denied having the hallucinations testified to by the victim. (R. 3:83-84). In an affidavit submitted at the state habeas level, Petitioner's trial counsel acknowledges that Petitioner and the victim had been diagnosed as mentally ill. (S.H.Tr.:24-25).

Petitioner has not shown either deficiency or prejudice. Although there is undisputed evidence in the record that he suffers from a mental illness, this is insufficient to raise an insanity defense under Texas law. Petitioner never claimed either prior to, or during, trial that he did not know what he was doing was wrong. He did not admit to committing the assault at all. He argued at trial, and in letters he wrote to the trial court prior to his trial, that he did not assault the complaining witness. (C.R.: 9, 13-14). Counsel was therefore not ineffective for failing to attempt this defense, and Petitioner has not shown by a reasonable probability that this defense would have succeeded if raised. *See Byrne v. Butler*, 845 F.2d 501, 513 (5th Cir. 1988) (holding that counsel is not ineffective for failing to raise insanity as a defense where the record did not reflect that there was any indication or evidence presented or evident to the attorney that this was a viable defense). This claim is without merit and should be denied.

## IV. JURISDICTION

In his second ground for relief, Petitioner asserts that the trial court did not have jurisdiction to try him for assault because the relevant Texas statute does not have an enactment clause, as

required by the Texas Constitution. (Pet. at 6). When it addressed this issue, the state habeas court found that Section 22.01 of the Texas Penal Code (under which Petitioner was charged and convicted) does have an enactment clause, and it concluded that the trial court had jurisdiction over his case. (S.H.Tr.:21-22). The Court of Criminal Appeals denied this ground on its merits based on these findings. This denial is not contrary to federal law.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). The state habeas court denied this ground based on its interpretation of state law, and this Court will not review that decision. This ground is without merit and should be denied.

## V. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VI. RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

SIGNED on this 10th day of April, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE